IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JACQUELINE M. LATSON                                                                PLAINTIFF

vs.                                          Civil No. 04-4129

JO ANNE B. BARNHART,
Commissioner, Social Security Administration                                       DEFENDANT

## MEMORANDUM OPINION

### Factual and Procedural Background:

Jacqueline M. Latson (hereinafter "Plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claims for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

The parties have each filed appeal briefs (Doc. #7 & 10). The history of the administrative proceedings is contained in the respective briefs and will not be recited herein, except as is necessary. It should be noted that on February 3, 2001, the plaintiff filed a Motion to Introduce New Evidence, and Brief in Support (Doc. #8 & 9). The defendant responded, in her appeal brief, on April 27, 2001 (Doc. #10). By way of this motion, plaintiff states that she seeks to introduce: a July 12, 2004, letter opinion by her treating psychiatrist, Edward W. Tobey, M.D.; a July 8, 2004, letter opinion form her treating neurologist, Jean K. Thomas, M.D.; a March 29, 2004 CT radiology report; a March 25, 2004 EEG report; and, a September

2, 2004 letter opinion form her treating clinical psychologist, Barry Bullard Ph.D. (Doc. #8, attachments 1-5).

The DIB application now before the undersigned was June 28, 2002, alleging an onset date of disability of May 29, 2002 (T. 61-63). Plaintiff alleges that she is disabled due to: depression; carpal tunnel syndrome; history of seizure disorder; history of surgical craniotomy; severe headaches; knee and ankle pain; back pain; swelling; history of blood clot; sensitivity to smells; deja vu phenomena; confusion; disorientation; insomnia; sleep talking and walking; loss of comprehension; sarcoidosis; history of surgical removal of nasal polyps; shortness of breath; anxiety with panic attacks; inability to control her emotions, such as crying; hallucinations; and, paranoia. The issue before this Court is whether the decision of the Commissioner is supported by substantial record evidence.

The administrative hearing was conducted on January 21, 2004 (T. 357-390), after which the ALJ rendered an adverse decision on May 28, 2004 (T. 12-20).

Plaintiff then requested review of the ALJ's decision by the Appeals Council (T. 8). Plaintiff did not submit any additional evidence or exhibits to the Appeals Council. On July 28, 2004, the Appeals Council denied Plaintiff's request for review (T. 4-7), thereby making the decision of the ALJ the final decision of the Commissioner. From that decision, Plaintiff appeals (Doc. #1, 7) and moves that the matter be remanded for consideration of additional evidence (Doc. #8 & 9). The Commissioner supports her decision, urging the undersigned to affirm this matter and deny the motion of additional evidence (Doc. #10). This matter is before the undersigned by consent of the parties (Doc. #6).

**Applicable Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel 212 F.3d 433, 435-436 (8th Cir. 2000).* Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).* In considering whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See Prosch, 201 F.3d at 1012.* We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.*

In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).* Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision. *Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).* It is well settled that proof of a disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir. 1992*).

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b).* If the claimant is so involved, benefits are denied; if

not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926.* If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d).* If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e).* If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f).* If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a).*

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d).* Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e).*

## Discussion:

Plaintiff has the burden of proving her disability. E.g., *Sykes v. Bowen, 854 F.2d 284,*

285 (8th Cir. 1988). Thus, she bore the responsibility of presenting the strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Despite the Plaintiff's burden, there is little support in the record for Plaintiff's claim of disability. It is well settled that proof of a disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan*, 981 F.2d 976, 978 (8th Cir. 1992).

On appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence (Doc. #7). However, many of the specific, itemized arguments included in Plaintiff's appeal brief are not tied to the facts of this case. For example, Plaintiff argues that the ALJ erred by failing to properly analyze Plaintiff's diagnosis of chronic pain syndrome (Doc. #7, pp. 2, 24, 25, 26, 27). Despite a thorough review of the administrative record, the undersigned found no diagnosis of chronic pain syndrome within the record, nor does Plaintiff provide a page citation where such a diagnosis can be found.

Plaintiff also argues that the ALJ erred in determining that Plaintiff could perform a full range of light duty work without first obtaining the testimony of a vocational expert. A vocational expert can be necessary when a claimant is found to no longer possess the residual functional capacity to perform her past relevant work. A vocational expert is not utilized to make a determination of what residual functional capacity range a claimant maintains the ability to perform. If vocational expert testimony were required to determine residual functional capacity, then every social security appeal which reached step four of the sequential evaluation would require testimony from a vocational expert. The law does not require such involvement of a vocational expert. In the event that an ALJ determines that a claimant's residual functional capacity should be reduced by a nonexertional impairment, then the ALJ must obtain testimony

from a vocational expert to determine what, if any jobs exist which may be performed with the reduced residual functional capacity. However, an ALJ is not required to obtain testimony from a vocational expert when determining a claimant's residual functional capacity. Here, at step four of the sequential analysis, the ALJ determined Plaintiff retained the residual functional capacity to perform her past relevant work as a teacher. Therefore, the ALJ was not required to obtain ALJ testimony. Yet, it should also be noted that the ALJ did, in fact, question a vocational expert during the course of Plaintiff's administrative hearing (T. 386-390). During the course of the testimony, the vocational expert provided answers to hypothetical questions as well as describing the exertional demand and skill level required of an elementary school teacher. Therefore, this argument is without merit.

Plaintiff also argued that the ALJ failed to evaluate the severity of Plaintiff's impairments pursuant to the listings. The ALJ's decision clearly addresses this issue (T. 12-13).

To prove disability, plaintiff had to establish a physical or mental impairment by medical evidence consisting of signs, symptoms and laboratory findings, rather than by only her own statements of her symptoms. See *20 C.F.R. § 404.1508.*

For purposes of Plaintiff's application for DIB benefits, the relevant time period begins with the date of the alleged onset of disability, May 29, 2002, (T. 61), and ends with the date of the ALJ's decision, May 28, 2004 (12-20). In order to establish that she suffers from a disability which makes her eligible for benefits, Plaintiff must prove that she was disabled within the time frame of the respective relevant time periods for each application.

Here, the record does not establish evidence of disability, as defined by the Act, during the relevant time periods. Nor does the record establish that Plaintiff suffered from a disability

prior to or after the relevant time periods. Although evidence of a disability subsequent [or prior] to the relevant time period can be relevant in helping to elucidate a medical condition during the time for which benefits might be awarded, such is not the case in the instant action. *Pyland v. Apfel, 149 F.3d 873, 877 (8th Cir. 1998), citing Fowler v. Bowen, 866 F.2d 249, 252 (8th Cir. 1989); Martonik v. Heckler, 773 F.2d 236, 240-41 (8th Cir. 1985); and, Social Security Act, §§ 216(i), 223(c), as amended, 42 U.S.C.A. §§ 416(i), 423(c)*. This is not a case wherein there exists a retrospective diagnosis or elucidation of a previous medical condition within the medical documentation from the relevant time period. Retrospective or previous medical diagnoses are relevant evidence of disability existing before the close of the relevant time period; however, when the specific dates encompassing the relevant time period are critical, retrospective or previous medical opinions alone will not usually suffice unless such evidence is corroborated, as by subjective evidence from lay observers such as family members. *Social Security Act, §§ 216(i)(3), 223(c)(1), as amended, 42 U.S.C.A. §§ 416(i)(3), 423(c)(1); Jones v. Chater, 65 F.3d 102 (8th Cir. 1995)*. Plaintiff did not produce any such testimony from witnesses at hearing (T. 357-390).

During the administrative hearing, Plaintiff testified that she worked through the end of the school year which ended in May of 2002 (T. 358). The onset date of May 29, 2002, coincides with the end of the last school year Plaintiff worked as a teacher. The record also reflects that since the alleged onset date, Plaintiff continues to engage in a wide range of activities of daily living. In her Social Security Disability Supplemental Interview Outline, Plaintiff reported that she engaged in a number of activities, including: bathing herself; dressing herself; performing her own hair care; doing laundry; washing dishes; changing sheets; ironing;

-7-

vacuuming and sweeping; taking out the trash; washing her car; raking leaves; shopping for groceries; shopping for clothes; doing banking and post office errands; cooking five meals per week; cooking sandwiches, frozen dinners, meats, vegetables, desserts, homemade bread, and dishes which require a recipe; paying bills; using a checkbook; counting change; driving; using public transportation; attending church; watching television; listening to the radio; reading; and, visiting friends and relatives (T. 66-67). At hearing, Plaintiff testified that she: tutor's three or four children in the afternoons; travels with her husband; drives a car; drives a car out of town; writes in a journal; attends Wednesday night Bible study at her church; attends church on Thursday nights for choir rehearsal; attends church on Saturdays when the church has a special event; attends Sunday school; and, attends Sunday worship at her church (T. 370-373).

Plaintiff received mental health treatment from a psychiatrist, Dr. Edward W. Tobey, and psychologist, Barry Bullard Ph.D., both of the Collom and Carney Clinic, from February 24, 2003, through February 5, 2004 (T. 316-330, 332-350). During the course of her treatment at Collom and Carney, Plaintiff often reported to her mental health providers that she was improving and increasing her activities of daily living. Mr. Bullard regularly encouraged Plaintiff to become more active and Plaintiff complied with this treatment goal. Specifically, Plaintiff reported that she: attended church services (T. 323); went to the grocery store (T. 323, 324); attended fellowship at church (T. 324); had a part in a church play (T. 324); went shopping for items other than groceries (T. 324); planned and went on a trip to Memphis (T. 324); started attending Eastern Star (T. 325, 328); inducted a new member into Eastern Star (T. 325); attended a convention in Ardmore (T. 327); and, attended a family reunion (T. 327). Mr. Bullard also noted that Plaintiff's affect was improving, that her crying during sessions had

AO72A
(Rev. 8/82)

ceased and that she is energetic and enthusiastic (T. 326, 327, 328). On November 6, 2003, Plaintiff's psychologist and psychiatrist, Mr. Bullard and Dr. Tobey, wrote the following letter:

> To whom it may concern:
>
> RE: JACQUELINE LATSON
> DOB: 12/01/1954
>
> Jacqueline Latson initially presented for psychological and psychiatric services on 02/24/03 with a chief complaint of depression that had been persistent for several months. She had had several stressors including a "forced" retirement from teaching, hear mother's death, and a history of arteriovenous malformation, subsequent brain surgery, and seizures. She also had sarcoidosis. She had been maintained on several medications prior to initial services, and had not responded well.
>
> Since her initial appointment, Mrs. Latson has been followed both psychologically and psychiatrically. She has *responded well to treatment*, though remains with some symptoms of panic and some symptoms of depression. *Overall, however, she has improved from her presentation eight months ago*. At this point, she is taking Vivactil and is continuing in psychotherapy. We *anticipate that Mrs. Latson will continue to improve*, though her presistent symptoms of panic are somewhat disconcerting.

(T. 191)(emphasis added).

There is substantial evidence of record to support the ALJ's finding that Plaintiff's depression and anxiety are controlled by medications (T. 12). If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995); Stout v. Shalala, 988 F.2d 85853, 855 (8th Cir. 1993).* Here, the combination of counseling and medication were controlling Plaintiff's depression and anxiety. The record does not reflect a 12 month period of time when Plaintiff's depression and/or anxiety were not controlled by medication.

The ALJ found that Plaintiff suffered from the severe impairments of sarcoidosis, headaches, history of craniotomy, history of seizure activity and sinusitus (T. 12, 19). He determined that when these impairments are considered in combination with one another, the combination of said impairments yields a severe impairment (T. 12). However, the ALJ duly notes that Plaintiff's sarcoidosis was in remission during the relevant time period, as well as Plaintiff's own testimony that she has not experienced a seizure since 1991. After conducting a psychiatric review technique within the body of the decision, the ALJ determined that although Plaintiff suffers from depression and anxiety, her depression and/or anxiety do not meet the criteria for a listed impairment, as both are controlled by medication (T. 12-20). The ALJ properly relied on Plaintiff's psychiatric treatment notes which regularly reflect that Plaintiff was doing well and improving throughout her treatment. Likewise, he properly considered the consultative mental evaluation. The consultative examiner noted evidence of exaggeration on the part of Plaintiff (T. 214). This notation was based upon inconsistencies in Plaintiff's neuropsychological test results. The examiner noted that Plaintiff's performance was so impaired on one portion of the test that such deficits would have been evident in the remainder of the tests. Such evidence did not appear in the remainder of her test results (T. 214).

Plaintiff also alleged that the ALJ erred in evaluating her credibility and nonexertional impairments (Doc. #7). In determining whether the ALJ properly disregarded Plaintiff's subjective complaints of pain, the Court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)* (subsequent history omitted), in evaluating her pain and credibility.

The absence of an objective medical basis which supports the degree of severity

AO72A
(Rev. 8/82)

> of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>   1. the claimant's daily activities;
>   2. the duration, frequency and intensity of the pain;
>   3. precipitating and aggravating factors;
>   4. dosage, effectiveness and side effects of medication;
>   5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original).

However, in addition to the requirement that the ALJ consider the Plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff and other witnesses. *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). The ALJ may discredit subjective complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala*, 5 F.3d 342, 344 (8th Cir. 1993).

The ALJ devoted a significant portion of his opinion to conducting the proper *Polask*i analysis (T. 12-20). The ALJ not only discussed the medical evidence, he also discussed the *Polaski* factors, such as Plaintiff's: alleged activities of daily living; frequency, intensity and duration; functional limitations and restrictions; dosage, effectiveness and side effects of medications; and, work history.

The ALJ properly evaluated Plaintiff's subjective complaints within his decision. He clearly considered and reviewed the *Polaski* factors as they apply to Plaintiff's case. Clearly, Plaintiff engages in a wide range of activities of daily living which are inconsistent with a

AO72A
(Rev. 8/82)

moderate to severe level of pain. Likewise, none of Plaintiff's medications are indicative of severe pain, or other severe, uncontrollable nonexertional impairment.

Plaintiff's allegations that the decision of the ALJ was not supported by substantial evidence are not supported by the administrative record. Therefore, the decision of the ALJ must be affirmed.

Plaintiff's motion to introduce new evidence must also be denied. Section 405(g) generally precludes consideration on review of evidence outside the record before the Commissioner during the administrative proceedings. See *Delrosa v. Sullivan, 922 F.2d 480, 483 (8th Cir.1991)*. Remand is appropriate only upon a showing by the plaintiff "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *42 U.S.C. § 405(g); see also Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir.1991)*. To be considered material, the new evidence must be "non-cumulative, relevant, and probative of the plaintiff's condition for the time period for which benefits were denied." See *Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir.1993)*. Furthermore, it must be reasonably likely that the Commissioner's consideration of this new evidence would have resulted in an award of benefits. *Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir.1997)*.

An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later-acquired disabilities or subsequent deterioration of a previously non-disabling condition. See *Goad v. Shalala, 7 F.3d 1397, 1398 (8th Cir.1993) (per curiam); Thomas v. Sullivan, 928 F.2d at 260-61*. Additional evidence showing a deterioration in a plaintiff's condition significantly after the date of the Commissioner's final

AO72A
(Rev. 8/82)

decision is not a material basis for remand, although it may be grounds for a new application for benefits.

Here, the "new" objective medical evidence presented consisted of medical records which were already included in the administrative record. These records were considered and reviewed by the ALJ in determining his decision. The other items are opinion evidence from Plaintiff's treating physicians. The ALJ had benefit of the opinions of the treating physicians when rendering his decision. Further more, the new and contradictory opinions of the treating physicians, without more are not material. Likewise, the Court takes note that all of the "new" evidence was available to counsel for Plaintiff prior to the ALJ's decision. Neither the motion for introduction of new evidence nor the brief in support thereof provide any explanation, good cause or otherwise, as to why the evidence was not obtained and presented prior to the date of the motion. Therefore, the Plaintiff has failed to meet her burden and her motion to introduce new additional evidence (Doc. #8 & 9) should be denied.

## Conclusion:

There is substantial record evidence to support the decision of the ALJ. Accordingly, the Commissioner's decision should be affirmed and the Plaintiff's complaint dismissed with prejudice. Plaintiff's motion to introduce new evidence should be denied. A judgement incorporating these findings will be entered pursuant to F.R.C.P. 52 and 58.

ENTERED this 27th day of September, 2005.

/s/Bobby E. Shepherd
Honorable Bobby E. Shepherd
United States Magistrate Judge

AO72A
(Rev. 8/82)